NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RACHEL EASTMAN and ACADEMIC SOFTWARE, on behalf of themselves and all others similarly situated, | : : : : : | **OPINION** |
| Plaintiffs, | : : | Civ. No. 10-4860 (WHW) |
| v. | : : |  |
| FIRST DATA CORPORATION and FIRST DATA MERCHANT SERVICES CORPORATION, | : : : : |  |
| Defendants. | : : : |  |

**Walls, Senior District Judge**

Defendants First Data Corporation and First Data Merchant Services Corporation (collectively "defendants" or "First Data") move to transfer this matter pursuant to 28 U.S.C. § 1404(a). Plaintiffs oppose the motion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motion is decided without oral argument. Defendants' motion to transfer is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Rachel Eastman resides in Dumont, New Jersey, and has been a New Jersey resident her entire life. (Compl. ¶ 7, Eastman Decl. ¶ 1.) She and Sandra Pomerantz (also a New Jersey resident) are co-owners of plaintiff corporation Academic Software. (Compl. ¶ 8, Eastman Decl. ¶¶ 2-3.) Academic Software is small business incorporated under the laws of

1

**NOT FOR PUBLICATION**

New Jersey, with its principal (and only) place of business located in Teaneck, New Jersey. (Eastman Decl. ¶ 3.)

First Data provides credit card processing equipment and services for small business owners. In October of 2008, Ms. Eastman and Academic Software executed a lease with First Data for a credit card point of sale terminal. (Compl. ¶ 54.) The plaintiffs filed a class action complaint against First Data Corporation and First Data Merchant Services Corporation on September 21, 2010. (ECF No. 1.) The plaintiffs allege that the defendants defrauded them and "thousands of small business by charging an exorbitant and unconscionable fee under a purported lease agreement for credit and debit card equipment." (Compl. ¶ 1.) The plaintiffs allege that First Data withheld and concealed material information, "allowing it to impose unconscionable charges and excessive fees." (Id.) The plaintiffs state that "First Data fraudulently induced Plaintiffs to accept an unconscionable lease for point of sale ("POS") credit card and debit card processing equipment," and that First Data "subjected Plaintiffs to charges not included on the merchant agreements for the POS leases." (Compl. ¶¶ 2-3.)

Ms. Eastman and Academic Software seek to represent "[a]ll customers in the State of New Jersey who leased point of sale credit and/or debit processing equipment from Defendants from the time period set by the applicable statute of limitations prior to the filing of this action to the date of judgment." (Compl. ¶ 6.) The complaint pleads violations of New Jersey common law and New Jersey statutory law, and includes claims for: breach of contract, breach of the covenant of good faith and fair dealing, fraudulent concealment, fraudulent inducement, violation of the New Jersey Consumer Fraud Act, unjust enrichment and declaratory relief. (Compl. ¶¶ 79-139.)

**NOT FOR PUBLICATION**

First Data Corporation is a Delaware corporation with its principal place of business in Atlanta, Georgia. (Answer ¶ 9.) First Data Merchant Services (FDMS) is a Florida corporation with its principal place of business in Atlanta, Georgia. (Answer ¶ 10.) First Data has facilities located in Melville, New York, and elsewhere. (O'Connell Decl. ¶ 4.)

On August 6, 2010, a different plaintiff, Azmie Madanat, filed a purported class action against First Data Corporation and First Data Merchant Services in California state court. (Df. Ex. A, Madanat Compl.) Mr. Madanat seeks to represent a class of California residents: 1) "who during any billing where [sic] charged for monthly payments in an amount above the contractual rate for that period," and 2) "who returned their POS Terminal(s) to Defendants prior to their lease expiration and who were charged for lease payments for any period of time after the return of the POS Terminal." (Madanat Compl. ¶¶ 41-43.) The Madanat complaint brings claims under California's Business and Professions Code, Section 17200, and claims under California common law for breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment and declaratory relief. (Id. at ¶¶ 55-78.) The defendants removed the Madanat action to the Northern District of California, and that court subsequently transferred it to the Eastern District of New York because the class representative was subject to a binding forum selection clause. The defendants now move to have this action transferred to the Eastern District of New York.

## STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). To transfer an action under Section 1404(a), venue must be proper both in the transferor court and the transferee court. Osteotech, Inc. v. GenSci Regeneration Scis., Inc., 6 F.

3

**NOT FOR PUBLICATION**

Supp. 2d 349, 357 (D.N.J. 1998). The party seeking to transfer must show that the alternative venue is not only adequate, but also more convenient than the current one. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). "[T]he decision to transfer must incorporate all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 498 (D.N.J. 1998) (quotation and citations omitted).

A court balances private and public interests when deciding to transfer venue. Jumara, 55 F.3d at 879. Private interests include a plaintiff's choice of forum, a defendant's preference, convenience of the parties as indicated by their physical and financial condition, convenience of witnesses to the extent that they may be unavailable in one forum, and the location of books and records to the extent they could not be produced in alternative fora. Id. The public interests that a court considers include enforceability of a judgment, practical considerations that could make the trial easy, expeditious or inexpensive, relative administrative difficulty in the two fora resulting from court congestion, local interest in deciding a local controversy, public policies of the fora, and familiarity of the district court with applicable state law. Id. at 879-80.

The Third Circuit Court of Appeals has adopted the first-filed rule, which states that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." EEOC v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) (quoting Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." Id. at 971. Its primary purpose is to "avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." Id. at 977 (citation omitted).

**NOT FOR PUBLICATION**

## DISCUSSION

**I.      Whether the Eastern District of New York is a "District in Which This Action May Have Been Brought" Under Section 1404(a)**

First, this Court must determine if the Eastern District of New York is a "district in which this action might have been brought" pursuant to section 1404(a). A district is one in which an action "might have been brought" if that district has: 1) subject matter jurisdiction over the claims, 2) personal jurisdiction over the parties, and 3) is a proper venue. See Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970).

The parties do not dispute that this action could have been brought against First Data Merchant Services in the Eastern District of New York. The parties' argument centers upon whether First Data Corporation, the corporate parent of FDMS, is subject to personal jurisdiction in New York. However, the defendants have submitted evidence showing that First Data Corporation is registered to do business in New York, and has appointed an agent for service of process in New York. (Supp. Corrigan Decl., Ex. B.) This makes First Data Corporation subject to personal jurisdiction in that state. See Sadler v. Hallsmith SYSCO Food Servs., Civ. No. 08-4423, 2009 WL 1096309, at *1 (D.N.J. Apr. 21, 2009) ("A foreign corporation consents to being sued in a particular state by registering to do business in that state") (citing Bank v. Netlink, Inc., 925 F.2d 637, 640-41 (3d Cir. 1991)). Subject matter jurisdiction is proper because this action was brought under the Class Action Fairness Act (28 U.S.C. § 1332(d)(2)), and venue is proper because "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). The Court finds that this action "could have been brought" in the Eastern District of New York.

**NOT FOR PUBLICATION**

## II.   Whether the Private and Public Interests Favor Transfer to the Eastern District of New York

A. Private Interests

The first private interest to consider is the plaintiffs' forum preference.  Generally, a plaintiff's choice of venue is entitled to deference and "should not be lightly disturbed."  Jumara, 55 F.3d at 879; see also Shutte, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request") (citations omitted).  The significance of this factor "diminishes where the plaintiff chooses a foreign forum rather than his or her home forum," and "decreases even further where the central facts of a lawsuit occur outside the chosen forum."  Peikin v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, 660 (D.N.J. 2008) (citing In re Consol. Parlodel Litig., 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998)).  The defendants argue that the weight accorded to a plaintiff's choice of forum is also considerably reduced in class actions.  While true, this consideration has primary significance "in class actions of a national nature, that is, where the plaintiff class is scattered broadly throughout the country."  See Prof'l Adjusting Sys. of Am., Inc. v. Gen. Adjustment Bureau, Inc., 352 F. Supp. 648, 650 (E.D. Pa. 1972).  In this case, New Jersey is the plaintiffs' home forum, and the forum in which the central facts of this lawsuit occurred.  And while this matter is a putative class action, it is not national; the proposed class of plaintiffs is concentrated entirely within New Jersey.

The plaintiffs' claims arose primarily in New Jersey.  The plaintiffs attended First Data sales presentations in New Jersey.  (Eastman Decl. ¶ 4.)  All of the documents signed by the plaintiffs were delivered in New Jersey and executed in New Jersey.  (Id.)  The point of sale equipment used by the plaintiffs was delivered to Academic Software's office in New Jersey.  (Id. ¶ 5.)  This equipment was installed and operated only in New Jersey.  (Id.)

**NOT FOR PUBLICATION**

On balance, the evidence shows that New Jersey is more convenient for the plaintiffs, see Wendell v. Johnson & Johnson, Civ. No. 09-3273, 2010 WL 4025624, at *3 (D.N.J. Oct. 13, 2010) ("The rule deferentially viewing a plaintiff's choice of forum is premised on an assumption that a home forum is inherently more convenient than a transferee forum") (citation omitted), and not significantly less convenient for the defendants. The distance between the two fora is approximately 50 miles, which geographically puts the balance of conveniences near equipoise. Due to this close proximity, transfer would not create a major inconvenience for witnesses on either side. There is no reason to believe that important witnesses or documents could not be produced in one forum or the other. And in any event, "when documents can be transported and/or easily photocopied, their location is entitled to little weight." In re Laidlaw Securities Litig., Civ. No. 91-1289, 1991 WL 170837, at *2 (E.D. Pa. Aug. 27, 1991).

First Data argues that that the Eastern District of New York is more convenient because it operates a facility in Melville, New York, and "some services performed by First Data pursuant to and in connection with the Lease at issue were performed from its Melville facility." (Df. Br. at 9.) However, First Data admits that not all of its relevant evidence will be located in Melville, and that "[t]o the extent witnesses and documents are not located in New York, they will be found in locations nationwide." (Id.) First Data Corporation is a Delaware corporation with its principal place of business in Atlanta, Georgia, and First Data Merchant Services is a Florida corporation with its principal place of business in Atlanta, Georgia. First Data also has "substantial facilities" in Florida and Colorado. (O'Connell Decl. ¶ 7.) To the extent that First Data's facilities are scattered across several states, New York is not inherently more convenient for the defendants, and New Jersey is not significantly less convenient. On the other hand, the plaintiffs and their evidence are located entirely within New Jersey. The Court finds that the

7

**NOT FOR PUBLICATION**

plaintiffs' choice of forum is entitled to considerable deference, and that the private interest factors weigh in favor of denying transfer.

    B.  <u>Public Interests</u>

First Data, citing an interest in judicial economy, argues that this action should be transferred to New York because the <u>Eastman</u> and <u>Madanat</u> cases are "mirror images" of one another. It is true that the same defendants have been sued in each action, and that both plaintiffs' claims focus generally upon First Data's merchant leasing program. However, the <u>Madanat</u> case was brought under California law on behalf of California residents only, and the <u>Eastman</u> case was brought under New Jersey law on behalf of New Jersey residents only. One of the primary purposes of the first-filed rule is to avoid the embarrassment of conflicting judgments. <u>EEOC</u>, 850 F.2d at 977. As it stands, the classes do not overlap and there is no risk of inconsistent judgments. First Data has submitted an affidavit stating that <u>Madanat</u> plaintiffs' counsel has expressed an intention to amend the complaint to allege a nationwide class of plaintiffs. (Corrigan Decl. ¶ 3.) However, granting a motion to transfer on this basis alone would be premature. Currently, the alleged amendment has not even been made, much less a decision regarding class certification.

The parties have submitted conflicting data regarding comparative court congestion, and the Court finds that this factor does not tip the balance in either party's favor. No matter how the statistics are tweaked, the reality is that New York and New Jersey are both busy districts. Furthermore, "relative congestion of the respective courts' dockets is not a factor of great importance" on a motion to transfer. <u>Kisko v. Penn. Cent. Transp. Co.</u>, 408 F. Supp. 984 (M.D. Pa. 1976).

**NOT FOR PUBLICATION**

The public interest factors recognize that there is a "local interest in deciding local disputes at home." Jumara, 55 F.3d at 879.  This Court has an interest in deciding a case brought in a New Jersey court, under New Jersey law, involving New Jersey residents.  Federal courts in New Jersey have found that a plaintiff's "home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws."  In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 348 (D.N.J. 1997).  On the other hand, New York does not have a connection to the plaintiffs' claims or the putative class.  As such, "[t]he burden of jury duty ought not to be imposed upon the people of a community which have no relation to the litigation." Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 526 (D.N.J. 1998) (citations and internal quotation marks omitted).  And finally, this Court is intimately familiar with the applicable state law, that of New Jersey.  The Court concludes that New Jersey has more significant contacts with the events resulting in the instant litigation, and has a strong public interest in adjudicating this dispute.

## CONCLUSION

The Court has conducted the required analysis under 28 U.S.C. § 1404(a), and has determined that the private and public interest factors weigh in favor of denying transfer.  The defendants' motion to transfer venue to the Eastern District of New York is denied.

**s/ William H. Walls**
United States Senior District Judge